## MEDAD HOTCHKISS *against* JOHN NICHOLS.

A decree in chancery finding an *immaterial* fact is not admissible, in a subsequent suit at law between the same parties, to prove such fact.

MOTION for a new trial.

This was an action, *qui tam*, brought on the statute to prevent frauds, quarrels, and disturbances in bargains, sales, leases, or other alienations of lands.(*a*) The plaintiff declared, that on or about the first day of *November*, 1800, he became the sole and exclusive owner of an undivided moiety of a certain grist-mill, and the appurtenances, in *Woodbridge;* which moiety was before that time the property of *Lois,* wife of *James Downey:* that on the day before mentioned, he entered upon the premises, and took to himself the exclusive possession thereof, holding out therefrom all others, particularly *Downey* and his wife, claiming the premises as his own estate: that, at *Waterbury,* on the 14th day of *February,* 1802, the plaintiff being then in possession of the premises, and *Downey* and his wife, and the defendant disseised and ousted thereof, by the plaintiff's entry and possession; the defendant, contrary to the provisions of the statute, took and received a conveyance of the aforesaid moiety of the mill and appurtenances from the said *James Downey* and *Lois* his wife, to him, the defendant, *he then*

(*a*) *Stat. Conn.* tit. 97. c. 17.

*well knowing* that *Downey* and his wife were ousted of the possession of the premises, by the entry and possession of the plaintiff: and that the plaintiff then and there possessed, held, and claimed the same as his own estate in fee, exclusively of all others: and that, on the 15th day of *February*, 1802, the plaintiff being still in possession, the defendant caused the aforesaid deed of conveyance to be recorded in the records of the town of *Woodbridge;* and by virtue thereof, the plaintiff has ever since claimed title to himself in the premises.

The defendant pleaded *not guilty;* and a verdict was found for the plaintiff. A motion for a new trial was then made, on the following grounds:

1. Because the plaintiff, on trial of the cause, offered in evidence to the jury, to prove that he was in possession of the premises, holding adversely, and that *this was known by the defendant* at the time when he took the deed complained of, a certain decree in chancery, made by the *superior court,* in a cause wherein *Medad Hotchkiss* was plaintiff, and *John Nichols, James S. Downey* and his wife *Lois,* were defendants; which decree was admitted by the court, as evidence to prove the facts aforesaid; and is as follows, viz.

" *Superior Court, July Term,* 1804.

" Upon the petition of *Medad Hotchkiss* of *Woodbridge,* in *New-Haven* county, showing, that on the first of *November,* 1800, the petitioner was the owner in fee of one quarter of a grist-mill, in *Woodbridge,* on *Beacon-Hill* brook, called the *Straits Mill,* with all the privileges thereto appertaining. That *Samuel Osborne* was the owner of one other quarter; and that *Lois,* the wife of *James S. Downey,* then of *Woodbridge,* was owner of the remaining half. That previous to the first day of

*November*, 1800, the before-mentioned owners procured important and extensive repairs to be made upon the mill, mill-dam and appurtenances, to the amount of more than one thousand dollars. That the said *James* and *Lois* were unable to defray their proportion of the expense of such repairs; and that, at their request, the same was paid by the petitioner, to the amount of about four hundred dollars; and in consideration thereof, on or about the first day of *November*, 1800, the petitioner, and the said *Lois* and *James*, mutually covenanted and agreed, that for the consideration of five hundred dollars, to be paid in manner as was then stipulated, the said *James* and *Lois* would convey by a good and sufficient deed, their half of the aforesaid mill, with the privileges and appurtenances, to the petitioner. And that, from the sum of five hundred dollars should be deducted the sum advanced by the petitioner, for repairs, on their account; and the remainder, if any, as stated in the bill. That in pursuance of this contract, the said *Lois* and *James* delivered possession of the mill and appurtenances to the petitioner, for him to use, occupy and *improve* as his own; and to receive all the rents and profits from and after the aforesaid first day of *November*, 1800. That in pursuance of the contract, he took possession of the moiety of the mill, and has ever since used the same, receiving the profits, by their consent; and has made extensive repairs, at his own cost, in expectation of the fulfilment of the contract on the part of *Downey*. That the petitioner has ever been ready to receive the deed, according to the terms of the contract; and on or about the first day of *February*, 1802, and at other times, requested *Downey* and his wife to fulfil the contract. That on or about the 14th day of *February* last, *John Nichols*, of *Waterbury*, in *New-Haven* county, well knowing all the facts aforesaid, and contriving and intending to defraud the petitioner, and make gain to himself, applied to the said *James* and

*Lois,* and persuaded them to refuse to execute their contract with the petitioner, and to convey their half of the mill and appurtenances to him the said *Nichols;* and on the same 14th day of *February,* the said *James* and *Lois* did execute a deed of the same to the said *Nichols,* by force of which he has ever since claimed, and still claims, the same, and threatens suits therefore. That the petitioner has ever been ready to fulfil the contract on his part. That he has never received payment of the sums advanced by him, as aforesaid, but the same are now wholly due; and the said *James* and *Lois* are insolvent, and unable to pay the same. And that the value of the aforesaid moiety of the mill was, and now is, five hundred dollars; praying for relief," &c.

*Downey* and his wife were defaulted. *Nichols* pleaded, that the facts set forth in the petition were not true. The court found that those facts *were true;* and that, during the pendency of the petition, *Downey* and his wife, in pursuance of their contract, made, executed and delivered to the petitioner, a conveyance of their moiety of the mill and appurtenances, and settled the account stated in the petition. Upon which *Nichols* was enjoined against using the deed of *Downey* and his wife to him, in support of his claim to the mill, under a penalty of two thousand dollars.

The court charged the jury, that this decree was conclusive evidence of all the facts therein adjudicated between *Hotchkiss* and *Nichols;* particularly, that at the time *Nichols* took the deed from *Downey* and his wife, *Hotchkiss* was in possession, claiming title; and that this was known by *Nichols.*

Rule to show cause why a new trial should not be granted was obtained; and the question reserved to be argued before the nine judges.

*Ingersoll* and *Staples*, in support of the motion, contended, that the decree was not admissible evidence;

1. Because the decree and the suit at law were not between the same parties. *Buller's N. P.* 232. *Peake's Ev.* 68. *Gilb.* 24, 25.

2. The state is a party to the suit; and a part of the penalty recovered goes to the benefit of the state. The action, therefore, stands on the same ground with a criminal prosecution; but a verdict, or decree, in a civil action, is never given in evidence in a criminal case.

3. The facts found by the decree ought to be *material* and necessary to support the decree, in order that this may be given in evidence in another suit. That *Nichols knew* that *Hotchkiss* was in possession of the land, was not essential to support the decree. But it is absolutely necessary, that this fact should be proved, in order to subject the defendant in this suit.

*Daggett* and *Nathan Smith*, contra.

1. The parties to the *decree* and this suit, are virtually the same. *Downey* and wife, though made parties to the bill, were yet not parties to the decree; having complied with the demands of the petition before judgment.

Though the name of the state is used in connection with that of *Medad Hotchkiss*, he alone is the effective party. He can control the suit; his confessions may be admitted as evidence; and he, alone, is liable for costs.

The reason why a verdict may not be given in evidence against one who was not a party, is, that he had no opportunity to controvert the facts, on which it was

founded. This reason is not applicable to the present case; for *Nichols* was a party to the bill in chancery, and to the decree.

2. The facts of *Hotchkiss's* possession, and of the knowledge of *Nichols*, were put in issue by the defendant's plea to the bill, and found by the decree. *Whateley* v. *Menheim*, 2 *Esp.* 608. *Autram* v. *Morewood*, 3 *East*, 346.

3. The decree, if admissible, is conclusive as to the facts found. *Peake*, 34. *Esp. Dig.* 758. And it is no objection, in this case, that a part of the penalty to be recovered, is for the benefit of the public. *Atcheson* v. *Everitt*, *Cowp.* 382.

BY THE COURT. The question in this case is, whether the decree in chancery is conclusive evidence of the fact, that *Nichols* knew, at the time of taking the deed from *Downey* and his wife, that *Hotchkiss* was in possession of the land?

On examining the decree, it appears that the fact, to prove which the decree was offered, and which appears, in the terms of the decree, to have been found by the court, was not material in that case; and, although found, cannot be considered as put in issue on the bill in chancery.

Without determining, therefore, whether the decree of a court of chancery is evidence of the material facts found by the decree, in a suit between the same parties, regarding other rights; or whether such decree can be evidence of such facts, in an action for a penalty, it is sufficient to say, that this decree could not be evidence, in this case, for the purpose for which it was admitted. The court, therefore, advise a new trial.

New trial to be granted.