## FULTON v. HANLOW.

THE decision in *Hart v. Burnett* (15 Cal. 530) cited and followed upon the following points: That the city of San Francisco succeeded to the rights of the pueblo of Yerba Buena in the lands of the pueblo; that these lands were held in trust for the public use of the city; that they were not, either under the old Government or the new, the subject of seizure and sale under execution; that the title of the city was unaffected by sales of the Sheriff under executions against her; and that a defendant in ejectment, relying solely upon his possession, may set up the invalidity of such sales, or of the title derived therefrom, in defense to the action.

A declaration in a decree upon the character of the title of one of the parties, when the consideration of the character of such title is foreign to the case and unnecessary for its disposition, is without any binding force as an adjudication either upon parties, privies, or any one else.

In order that a judgment may be a defense in another action on the ground of *res judicata*, the same point must have been directly in issue and determined by the judgment.

It is the point as to which relief is sought and upon which the judgment rests, and not any incidental or secondary matter that may have been controverted by the parties, that becomes *res judicata*.

The city and county of San Francisco filed a complaint for the purpose of obtaining an injunction against the execution of a deed by the Sheriff to a purchaser under an execution sale of property held by the city, making the purchaser, the judgment creditor, and the Sheriff, parties defendant.    The complaint set up the nature of the city's title to the property, and facts going to show that it was not the subject of levy and sale under execution, and averred that a deed to the purchaser would be a cloud upon the title.    The defendants answered, the judgment debtor and Sheriff disclaiming all interest in the controversy,

Fulton v. Hanlow.

and the purchaser denying in substance the several grounds of equitable inter-position. The case was submitted on the pleadings alone, and the decision was to the effect that the sale under the judgment and execution was valid and effectual to pass the title of the premises to the purchaser, and that there was no equity in the complaint, and adjudging that the complaint be dismissed as to the judgment creditor and the Sheriff, and that the purchaser was entitled to a conveyance from the Sheriff: *Held,* that the purchaser's title was not so adjudicated in this action, or established by the decree, as to become *res judicata,* but was still open to be controverted in a subsequent action of ejectment between the parties or their privies.

Such a decree, by adjudging that there was no equity in the complaint, established the fact that the matters alleged were not sufficient for the exercise of the jurisdiction of a Court of Equity, and after this conclusion was reached, nothing was left for the Court but to deny the injunction and dismiss the suit; any determination as to the truth or falsity of the matters alleged was unnecessary and foreign to the case, and could not affect the rights of the parties in this respect when subsequently presented in a Court of law.

The judgment of a Court of Equity is equally effectual as *res judicata* as that of a Court of law, but the nature of their different jurisdictions must be considered in order to determine what was the exact matter decided, and upon what points the judgment operates as a final adjudication.

The only judgment that could be given in the equitable suit was merely one granting or denying an injunction, and the only direct point upon which that judgment could be based was that the deed would or would not be a cloud upon the plaintiff's title.

APPEAL from the Fourth Judicial District.

This is an action brought to recover the possession of a tract of land situated within the limits of the City and County of San Francisco, and specifically described by metes and bounds in the complaint.

The plaintiff claims title by virtue of a conveyance executed to Frank M. Pixley by the Sheriff of the county of San Francisco, upon a sale made under an execution issued from the District Court of the Twelfth Judicial District, in the case of the *San Francisco Gas Co.* v. *The City of San Francisco,* upon a judgment recovered in said case against the city, and of certain mesne conveyances from Pixley to the plaintiff. The judgment of the Gas Company was recovered and docketed May 14th, 1856; the execution thereon was issued February 10th, 1858; the sale thereunder was made March 23d, 1858, and no redemption having been made, the Sheriff's deed was executed to Pixley, the purchaser, December 13th, 1858.

On the twenty-third of September, 1858, the City and County of San Francisco, the successors to the rights and title of the city in the premises, filed a complaint against the Gas Company, the Sheriff of the county, and Pixley, for an injunction to restrain the Sheriff from executing and Pixley from receiving a conveyance of the premises sold. The following are copies of the complaint, the answer of defendants, and the decree of the Court in that case:

[COPY OF THE COMPLAINT.]

" District Court, Twelfth Judicial District, City and County of San Francisco.

" *The City and County of San Francisco* v. *The San Francisco Gas Company, Frank M. Pixley and Charles Doane, Sheriff of the County of San Francisco.*

" The City and County of San Francisco, a corporation existing under and by virtue of the laws of the State of California, and plaintiff in the above entitled action, complains against the San Francisco Gas Company, Frank M. Pixley and Charles Doane, Sheriff of the county of San Francisco, and for cause of action shows to the Court—

" That heretofore, to wit: on the fifteenth day of April, 1851, the city of San Francisco was incorporated as a municipal corporation by an Act of the Legislature of the State of California, entitled 'An Act to reincorporate the City of San Francisco,' and continued to be such corporation until the nineteenth of April, 1856.

" That on the nineteenth of April, 1856, by virtue of an Act of the Legislature of the State of California, entitled 'An Act to repeal the several Charters of the City of San Francisco, to establish the boundaries of the City and County of San Francisco, and to consolidate the Government thereof,' approved that day, the said city of San Francisco ceased to exist as a distinct and independent municipal corporation, but was merged and did become an integral part of the county of San Francisco, by the name of the City and County of San Francisco, which said county of San Francisco was then and ever since has been and now is one of the counties of the State of California.

" And by virtue of the same act, the public buildings, lands and

Fulton *v.* Hanlow.

property, all rights of property and rights of action, and all moneys, revenues and incomes belonging or appertaining to the corporation of the city of San Francisco or the county of San Francisco, vested in and appertained to the said city and county, and do now vest in and appertain to the said city and county, the plaintiff herein.

"And the plaintiff further shows, that the San Francisco Gas Company is a corporation existing under and by virtue of the laws of the State of California, and has been such corporation for more than two years last past; and that heretofore, to wit: on the fourteenth day of May, 1856, in the District Court of the Twelfth Judicial District, in and for the county of San Francisco, the said San Francisco Gas Company recovered a judgment docketed that day against the city of San Francisco, for the sum of twenty-five thousand eight hundred and seventy-eight dollars and seventy-five cents, with three hundred and forty-nine dollars costs of suit, which judgment remains in part unsatisfied.

"And the plaintiff further shows, that on the ninth day of February, 1856, the said San Francisco Gas Company, by James Donahue, President, and James G. Eastland, Secretary of said Company, assigned the said judgment, for a valuable consideration, to the said defendant Frank M. Pixley, with an irrevocable power of attorney to said Pixley to enforce the said judgment, and to collect the money due thereon in the name of said San Francisco Gas Company, which said judgment and power of attorney were filed in the Clerk's office of said Court on the ninth day of April, 1856; and that the said Pixley now claims to be the owner of the whole or a part of said judgment.

"And the plaintiff further shows to the Court, that on the tenth day of February, 1858, an execution was issued out of the said District Court of the Twelfth Judicial District upon the judgment aforesaid, duly attested and delivered to said Charles Doane, Sheriff as aforesaid, directed to him, which said execution was issued at the suit of the said San Francisco Gas Company, and by the direction of the said Pixley; and the said Pixley ordered and directed the said Sheriff to levy said execution upon the lands hereinafter described, and the said Sheriff, under the direction of the said Pixley, on the —— day of ——, 1858, did levy upon and take in execu-

tion the said lands hereinafter mentioned as the property of the city
of San Francisco; and on the twenty-third day of March, 1858, the
said Sheriff did, under the like order and direction of the said Pix-
ley, and under and by virtue of the said execution, and in the man-
ner provided by law, expose and offer the said lands for sale at
Sheriff's sale, and did then and there sell the same to the said de-
fendant Pixley, for the price and sum of $3,000, that sum being
the highest sum bid for the same; and the said Pixley being the
highest and best bidder therefor, and thereupon the said Sheriff, in
the manner required by law, executed and delivered to the said
Pixley the certificate of sale of said land.

"And the plaintiff further shows to the Court, that on the twenty-
third day of the present month of September, 1858, six months
will have expired since the said Sheriff's sale of the said land as
aforesaid, and the said Sheriff Doane threatens that after the said
twenty-third day of September, 1858, he will execute and deliver
to the said Pixley a deed of said land in due form of a Sheriff's
deed of real property sold on execution, and the plaintiff believes
that he will do so unless restrained by an injunction out of this Hon-
orable Court.   The land above mentioned is bounded and situated
as follows, to wit: (here follows a description by metes and bounds of
two parcels of land within the limits of the city of San Francisco.

"And the plaintiff has hereunto annexed a copy of the execution
hereinbefore referred to, and the return of the said Sheriff thereon,
and prays that the same may be taken as part of its complaint.

"And the plaintiff further shows to the Court, that under and by
virtue of an Act of the Legislature of the State of California,
passed May 1st, 1854, entitled 'An Act to declare exempt from
forced sale under execution or other process certain property of
the several Counties of the State,' all lots or land belonging to any
county in this State are exempt from forced sale under execution
or other process from any Court, and the plaintiff avers that under
and by virtue of said act, the land hereinbefore described was and
is exempt, being property of the county of San Francisco, and that
the same is not liable and since the first day of July, 1856, has not
been liable to be levied upon and sold as aforesaid.

"And the plaintiff further shows to the Court, that said lands

Fulton *v.* Hanlow.

belonging to the county of San Francisco constitute one of the sources of its revenue by which its government is supported and maintained, and that neither the revenue of the county, nor the sources of such revenue, can lawfully be seized upon, taken on execution, or in any manner be diverted from the use and control of the said county.

"And the plaintiff further shows to the Court, that the said county of San Francisco constitutes an integral portion of the State of California, and of the government and sovereignty thereof; that the judgment hereinbefore mentioned is a debt due and owing by the said county to the judgment creditors; that such debts can be collected and the payment thereof enforced against either the State of California, or the county of San Francisco as an integral part thereof, only in the manner prescribed by statute; that full and ample provision for the payment of this, and all other debts of the county, has been made in and by the act entitled 'An Act to repeal the several Charters of the City of San Francisco, to establish the boundaries of the City and County of San Francisco, and to consolidate the government thereof,' passed April 19th, 1856, by providing that taxes shall be assessed and collected, and that the government of said city and county, out of her said taxes so levied and collected, shall provide for the payment of all debts of said city and of said county, and that neither the law or the public good will allow that the debt hereinbefore mentioned, nor any of the debts of the said county or of the said city, shall otherwise be collected or the payment thereof enforced.

"And the plaintiff further shows to the Court, that the land hereinbefore mentioned is not held by the City and County of San Francisco in fee simple and in absolute ownership, but is certain real estate derived to said city from the former Mexican Government of this country, by operation of the laws of Mexico, in part for the use of the persons who shall require the same for actual settlement, to be granted to them by the proper authorities of the municipal government that should succeed to said land, and not to be otherwise sold or disposed of; that the nature of said trust has never been changed by lawful authority; that the claim of the city of San Francisco to the said lands has never been confirmed finally by

the United States Government, but that the petition of the said city for the grant of said lands in fee is now pending and undetermined in the Supreme Court of the United States, and that the city and county of San Francisco has not now any and never has had any other interest in said lands than as a mere trustee as aforesaid, nor any estate by which the said lands might lawfully be made the subject of an execution against the property of said city and county.

" And the plaintiff further shows to the said Court, that at the time when the city of San Francisco is alleged to have contracted the debt for which judgment was rendered against said city as aforesaid, in favor of the San Francisco Gas Company, in the District Court of the Twelfth Judicial District, at the suit of the *San Francisco Gas Company* v. *The City of San Francisco,* the said city of San Francisco was indebted to various persons in an amount equal to the whole amount for which said city was by law allowed to become indebted, and that said city was wholly incapable of contracting the debt upon which said judgment was rendered, and that said judgment is wholly null and void, as being rendered for a debt that could not be legally contracted.

" And the plaintiff further shows to the Court, that the execution and delivery of the deed of said land by said Doane, Sheriff, as aforesaid, to said Pixley, as the said Doane threatens to execute and deliver the same, will cloud the plaintiff's title to said land, and that said deed when so executed and delivered will be a perpetual cloud upon the plaintiff's title to said land, and will work great and irreparable injury to the plaintiff by depriving the city and county of a large portion of its revenue, and that the city and county has no remedy at law against this wrong and injury.

" Wherefore, the plaintiff prays that a writ of injunction may issue out of this Honorable Court, restraining the said defendant Pixley from demanding, and the said defendant Doane, as Sheriff of the county of San Francisco, from executing and delivering to said Pixley any deed of the land described in this complaint, as under or in pursuance of the Sheriff's sale of said land in this complaint mentioned, and that on the final hearing of this cause said

Fulton *v.* Hanlow.

injunction may be made perpetual, and for such other and further relief as to equity may pertain. F. P. TRACY,

" City and County Attorney."

[Verified in the usual form.]

[COPY OF THE ANSWER.]

" *The City and County of San Francisco* v. *The San Francisco Gas Company, F. M. Pixley and Charles Doane, Sheriff of the City and County of San Francisco.*

" The defendants, by F. M. Haight, their attorney, for answer to the complaint of the plaintiff, say : The San Francisco Gas Company, severally answering, say, they disclaim all interest in the subject matter of this suit, and said company is not a necessary or proper party hereto upon the facts in said complaint stated.

" The defendant, Charles Doane, severally answering, says : that he admits he is Sheriff, but believes that, acting in his official capacity in executing process, he is neither a necessary or proper party to this suit, and can have no interest in the litigation of the same.

" And these defendants, further answering, say : they deny that any adequate provision is made in any way for the payment of the debts of the city of San Francisco, or the county of San Francisco ; and they deny that the land in said complaint described constitutes any source of revenue to the said city and county of San Francisco ; and they deny that the said land is exempt from sale, and judgment, and execution, or that any law could legally be passed exempting the property of the corporation of the city and county of San Francisco from sale for the former debts of the city and county of San Francisco, or the present debts of the city and county of San Francisco.

"And the defendants, further answering, say : they deny that the land in said complaint described is held in trust by the city and county of San Francisco ; but the same, as these defendants are advised and believe, is the property of the city and county of San Francisco, and was the property of the city of San Francisco when the judgment in the complaint mentioned was docketed, and that such judgment was and became a lien thereon, at the time, for the purpose in said complaint mentioned.

30

Fulton *v.* Hanlow.

"And the defendants, further answering, say: they deny that the said city was incapable of contracting the debt for which said judgment was rendered, and they submit that a judgment having been duly rendered, it cannot be reviewed in the manner proposed in the complaint of the plaintiff.

"And these defendants, further answering, say: they do not understand why any cloud can be cast on the title of the plaintiff, as the plaintiff alleges there was title in the city and county of San Francisco, and they ask to be hence dismissed and have their costs adjudged to them.          F. M. and H. H. HAIGHT,
                                "Attorneys for Defendants."
          [Verified in the usual form by the defendant Pixley.]

[COPY OF THE DECREE.]

"In the District Court of the Twelfth Judicial District of the State of California in and for the City and County of San Francisco.

"*The City and County of San Francisco* v. *The San Francisco Gas Company, Frank M. Pixley and Charles Doane, Sheriff of the County of San Francisco.*

"This cause, being a case in equity, having been submitted to the Court on complaint and answer, and the briefs of the attorneys for the respective parties, and due deliberation being thereupon had, it is ordered, adjudged and decreed that the sale under the judgment and execution of the San Francisco Gas Company against the city of San Francisco, in the complaint and answer mentioned, was valid and effectual to pass the title to the premises in controversy to the purchasers on said sale, and that there is no equity in the complaint of the plaintiff; and it is, therefore, ordered, adjudged and decreed, that as to the defendants, Charles Doane and the San Francisco Gas Company, said complaint be dismissed, and that defendant, Frank M. Pixley, as purchaser of said premises, is entitled to a conveyance thereof under the sale by execution in the pleadings stated, and that defendants recover their costs of this suit against the plaintiff, taxed at four dollars and fifty cents.

"Judgment entered Sept. 13th, A. D. 1859."

The present action was referred to a referee to try all the issues and report a judgment. On the trial, the plaintiff produced and

offered as evidence a copy of the record of the judgment in favor of the San Francisco Gas Company against the city; the execution issued thereon; the deed of the Sheriff to Pixley; and also a copy of the record of the proceedings in the equitable suit for an injunction; the decree of the United States Board of Land Commissioners confirming the title of the city of San Francisco to the old pueblo lands; and a copy of the decree of the United States District Court, granting leave to the city, upon the stipulation of the Attorney General, to proceed upon the decree of the Land Commissioners as upon a final decree.

By stipulation between the parties, it was admitted that the copies thus produced and offered were true and correct copies of the originals; and that the lands described in the complaint in the present action were a portion of the pueblo lands of San Francisco, formerly known as the Yerba Buena, and a portion of the lands confirmed to the city of San Francisco by the decree of the United States Land Commissioners; and that if the title to the lands was acquired by the purchaser on the Sheriff's sale, and by the subsequent proceedings in the equitable suit in the District Court, that then the plaintiff has all the right, title and interest thus acquired, and owned the land at the commencement of the action. The defendant's counsel, upon the presentation of the above-mentioned papers and stipulation, objected to the introduction of the records and papers, on the ground that they were irrelevant and immaterial, and did not show any title in the plaintiff. The referee overruled the objection and admitted in evidence the records and papers, and the defendant's counsel excepted. The referee reported his findings of fact, and a judgment for the plaintiff for the possession of the land described in the complaint. In pursuance of the report, judgment for the plaintiff was entered by the District Court, and from this judgment defendant appeals.

*Thompson and Glassell* for Appellant.

The material facts presented in this case, except as they are affected by the decree in the equitable suit, are precisely prarallel with those presented in the case of *Hart* v. *Burnett, et al.* (15 Cal. 530).

That case, like the present, was an action of ejectment for the recovery of lands claimed under a Sheriff's deed, made in pursuance of a sale under execution upon a judgment against the city of San Francisco, and levied upon lands claimed by the city as the successor of the former Mexican Pueblo of San Francisco. All the material questions, therefore, which can possibly arise in this case upon the facts, except as they are affected by the said decree, were fully presented, and are most elaborately discussed, and definitely settled, in the able and conclusive opinion of the Court, as delivered by Mr. Justice Baldwin. The gist of the decision, so far as this case is concerned, is contained in the fifth proposition affirmed by the Court in the conclusion of its opinion, and is in the following words :

" That those municipal lands to which the city of San Francisco succeeded were held in trust for the public use of that city, and were not, under the old government or the new, the subject of sale under execution." The principles asserted, and the conclusions arrived at in that opinion, may be considered as the unanimous and deliberate judgment of the whole Court, and as settling the rule of property in similar cases for all time ; for, although Mr. Justice Cope dissented from his associates, yet it was simply upon the ground of *stare decisis*, founded upon the idea that the principles affirmed in the opinion were in conflict with former decisions of the Court, under which rights of property had accrued. In the conclusion of his opinion, he states distinctly, that if the questions presented had been *res integra*, he would have had no difficulty in arriving at the same conclusions as his associates, and that he should consider himself bound by their determination in all future cases involving the same questions. It is scarcely to be presumed, then, after this solemn determination upon the fullest and most elaborate argument, and in view of the great benefit already derived to the public by the settlement of those questions, in the opening up for settlement and improvement of large tracts which have hitherto laid waste and desert, and the consequent increase of the city in wealth and population, that the Court, however constituted, would now change a decision so fully sustained by reason and authority, in order to return to the crude and undigested *dicta* contained in some

of its former decisions. We might, therefore, safely rest the case upon the authority of that decision alone. It is, however, contended by the plaintiff, that the proceedings, and the decree in the equitable suit in the Twelfth District Court, subsequent to the levy and sale under the execution upon which said Sheriff's deed was made, had the effect to change the character of the estate conveyed by said Sheriff's deed, and to vest in the grantee and his assigns a full and complete title to the premises thereby conveyed, and to entitle him to recover against the defendant in this action.

In reply, then, to this position of the plaintiff, we lay down and shall attempt to establish two propositions, either of which, if sustained, will be fatal to the plaintiff's right to recover, to wit:

I. That the referee erred in receiving in evidence the record of said proceedings, the same being illegal, irrelevant and immaterial.

II. That said evidence, if properly admitted, had no such effect or operation as is claimed for it by plaintiff.

As to the first proposition, the only ground upon which we can presume the record was admitted, was the principle of *res judicata*, and that it was conclusive of the plaintiff's right to recover against the defendant in this case. Assuming such to be the case, we will proceed to examine the question of the admissibility of the testimony with reference to the well-settled legal principles which control in such cases. Starkie (Vol. 1, 185) lays down the rule in the following words: " It is an elementary rule and principle of justice, that no man shall be bound by the act or admission of another to which he is a stranger ; and consequently, no one ought to be bound as to a matter of private right, by a judgment or verdict to which he was not a party, where. he could make no defense, from which he could not appeal, and which may have resulted from the negligence of another, or may even have been obtained by fraud and collusion."

Phillips' Evidence (Vol. 2, 5) lays down the rule in the language of Lord Chief Justice DeGrey, as follows :

" First, a judgment of a Court of concurrent jurisdiction, directly upon the point, is as a plea, a bar, or as evidence, conclusive, between the same parties, upon the same matter directly in question in another Court; secondly, that the judgment of a Court of

exclusive jurisdiction, directly upon the point, is in like manner conclusive upon the same matter, between the same parties, coming incidentally in question in another Court for a different purpose; but neither the judgment of a concurrent or exclusive jurisdiction is evidence of any matter which came collaterally in question, though within their jurisdiction, nor of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment."

To make the record, then, admissible in evidence, in this case, the following requisites are necessary:

1st. It must be between the same parties or their privies.

2d. It must be upon the same matter.

3d. It must be upon the same point.

4th. The point must be raised directly, and not come collaterally in question.

Let us now proceed to test the admissibility of the record in this case, by the principles as deduced from the authorities above cited.

. 1st. The defendant in this case, against whom the record is sought to be admitted in evidence, was not a party to that proceeding, nor in any manner privy to the same. The latter was a suit in equity between the city and county of San Francisco, plaintiff, and the San Francisco Gas Company, the Sheriff Doane, and Pixley, the purchaser of the Sheriff's sale. It appears from the record itself, that the present defendant was not a party. It therefore wants the first and indispensable essential to its admissibility. It will scarcely be contended that there is any privity between the defendant in this action, and the parties to the former suit; nothing of the sort is shown in the record, nor is any attempt made to prove it; it is true, there is privity between the plaintiff and the city of San Francisco, from which he derives his title by the Sheriff's deed; but to make the record admissible against the defendant, it must appear that he was a party, or the privy of the city. So far from this being the case, the answer of the defendant shows that he is claiming adversely both to the plaintiff in this action, and to the city, under which the latter claims.

The defendant, therefore, not being either a party or privy to the former proceeding, it was as to him *res inter alios acta*, and not evidence against him.

Fulton *v.* Hanlow.

2d. It must be upon the same matter.

It is not only essential that the matter should be the same, but the form of action should be substantially the same, (1st Starkie, 194) or in the language of the same author, (p. 199) it must be "a like action, of a like nature, for the same thing." These rules apply only where the record of the prior suit operates in bar, or by way of estoppel, on the party against whom it is sought to be introduced. It is not denied that when the prior suit was between the same parties or their privies, concerning the same matter, the judgment in that action might be given in evidence to prove any point which was directly decided in it, and which was essential in the subsequent suit. But such judgment would be conclusive as to that point alone. We cannot better illustrate this idea than by quoting from the opinion of the Supreme Court of the United States, in the case of *Hopkins* v. *Lee* (6 Wheat. 109, as cited in Hill and Cowen's notes, vol. 4, note 12). In that case, like the present, the record of a prior suit in equity was sought to be introduced in an action at law, with the distinction that both suits were between the same parties. In their opinion the Court say: "The object of the bill in chancery was to get refunded money which the purchaser of an estate alleged he had been obliged to expend to free the estate from incumbrances which the seller was bound to remove. The object of the action at law was to recover damages for not conveying the military lands which were to be taken in part payment. Nothing could be more distinct than the object of the two suits; they were not for the same matter, cause or thing, and let the issue of the bill in chancery have been as it might, the decree could not have been pleaded in bar of the action at law. But, by way of evidence, the decree in chancery was held conclusive to prove the discharge of the incumbrances upon the estate; that being the matter directly adjudicated upon in the suit in chancery."

The distinction in this case, between the suit in chancery and the action at law, is not less marked than in the one above cited; yet the referee seems to have considered the decree in chancery as operating in bar, or by way of estoppel upon the defendant, although he was no party to the proceeding. We assume this to be the case, because we can imagine no other ground upon which

he could have arrived at his "conclusion of law" in direct conflict with the principles settled in the case of *Hart* v. *Burnett*. According, then, to the authority cited above, even if the defendant in this action had been a party to the chancery suit, and bound by the decree, the only purpose for which it could have been received in evidence would have been to prove that the Court had, by its decree, refused to restrain the Sheriff from executing the deed to Pixley, according to the terms of the levy and sale. In this case, the deed itself is in evidence. The testimony, therefore, of the record in the chancery suit would, even in that case, have been wholly immaterial and consequently inadmissible.

3d. The same point must be raised.

It is scarely necessary to discuss this proposition; a simple reference to the records of the two cases will be sufficient to show that there can be no identity between the points raised in the two cases. The first is a bill in equity to restrain the Sheriff from executing a deed to the grantor of the present plaintiff; the last is an action of ejectment brought by plaintiff under the title acquired by virtue of the Sheriff's deed, against a stranger. No point that was decided in the former can possibly arise in the latter. The deed had been made some nine months before the decree was rendered, and the only effect of the latter, if it had any effect at all, was to give a judicial sanction to an act already consummated. No question as to the right of possession—the only question in an action of ejectment—was raised. No question of title was necessarily presented or decided. The only matter put in issue was, whether the Sheriff should be allowed to execute a deed in pursuance of such levy and sale. This issue the Court decided in the affirmative, which it well might do, without passing upon any question of title, inasmuch as the levy is only made on, and the deed executed for, whatever right, title and interest the city might have in the premises.

But, if any point as to the title was raised or decided, it only came up collaterally, and therefore, according to our fourth proposition, could not be used in evidence even against a party to the record—much less against one who was no party.

The rule upon this point is clear and explicit. The judgment or decree is not evidence of any matter which came collaterally in

question, nor of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment, as having constituted one of the grounds of that judgment.   (1 Starkie, 201.)

One of the reasons given for that rule is, that, although the express matter adjudicated upon is certain, the grounds of the adjudication are uncertain.   This principle is illustrated by several cases; as for instance, where letters of administration were refused by a Probate Court, upon the ground that the applicant was not married to the deceased, the judgment of the Probate Court to disprove the marriage was rejected in a Court of law.   The reason under the rule is obvious; the direct question was the granting the administration, and although in determining that question, the fact of the marriage was necessarily disaffirmed, yet it was rejected as evidence as to that fact, because it was only collateral or incidental to the main question at issue.   In this case, the direct question presented was whether the Sheriff Doane should be restrained from executing a deed in pursuance of the execution and sale.   The Court decided that he should not.   If the Court decided any question of title in order to arrive at that conclusion, it was clearly collateral to the direct point at issue, which was the granting or refusing the injunction.   The decree, therefore, could not be received in evidence, even if the parties to the record were the same.

As to the second proposition.   The decree in the equitable suit can have no effect to enlarge or in any manner affect the title acquired by the purchaser at the Sheriff's sale under the deed executed by that officer, from which the plaintiff derives his title.

1. There is nothing in the language of the decree itself which refers to or affirms any other title than that derived from the Sheriff's sale.   The decree declares that the sale under the judgment and execution was valid, and sufficient to pass the title to the purchaser, and that the purchaser was entitled to a conveyance.   Now, what was the title referred to in the decree ?   It was clearly that levied on and sold by the Sheriff, and set out in his deed to the purchaser, to wit: all the right, title and interest of the city of San Francisco in the lands sold.   Upon the execution of that deed, the decree became absolutely null and inoperative; its efficacy was exhausted by the consummation of the act which it ordered to be performed.   The

title to which it referred, and which it directed the Sheriff to convey to the purchaser, was made by that officer, and conferred all the right that the purchaser could acquire under the sale and decree. Upon that deed, therefore, and that alone, the plaintiff must rely as the source and origin of his title.

2. Admitting that any question of title was decided by the decree, it conferred no legal estate, and could not, therefore, be received in a Court of law as evidence of a legal title. (*Aldridge* v. *Giles*, 3 Hen. & Munf. 136.)

3. The contract of sale was consummated, and the title to the premises as described in the deed perfected by that conveyance. No previous irregularities in the execution or judgment could affect the title of the purchaser. (*Jackson* v. *Kornburgh*, 1 John's Cases, 155; 13 John. 102; *Neilson* v. *Neilson*, 5 Barb. 565.) Neither would it be affected by any matters subsequent to the sale between parties to whom he was a stranger, and with whom he had no privity. (*Jackson* v. *Bartlett*, 8 John. 362.)

*O. L. Shafter*, for Respondent.

I. The decree in the equitable suit is an adjudication that the lands sold to Pixley under the execution upon the judgment of the Gas Company against the city were not held by the city under any trusts, but that they were subject to levy and sale; and that by the sale and Sheriff's deed the title passed to and became vested in the purchaser.

The questions involved arise under the maxim of "*res judicata, pro veritate accipitur*," and in their more general analysis, may be stated as follows:

First.   What is the true import of the doctrine embodied in the maxim?

Second.   Is this case within the rule, or without it?

We shall discuss these questions in the order in which they are above stated.

1. What is the true import of the doctrine stated in the maxim? The rule has been enunciated under two distinct forms:

"A thing adjudged is received as true."

"No man shall be twice vexed for one and the same cause."

Regarding these maxims in the light of definitions, there are two distinct facts called for by them expressly: 1. A cause of action. 2. A prior judgment thereon.

By a series of judicial decisions, it has been settled, however, that the Court by which the judgment was rendered should have had jurisdiction of the subject matter and parties; that the judgment should have been upon matters directly in issue; that the issues should have been upon material and traversable matter ; and that the parties to the second suit should have been parties to the suit in which the judgment was rendered, or (as a general rule) have been in privity with such parties.

The foregoing is submitted as a general summary of the conditions of fact upon which the rule of " *res judicata* " proceeds. Whenever a case presents itself which ascertains all of these *criteria*, the rule intercepts, as by estoppel, all further litigation on the substantive questions covered by the prior adjudication.

Not relying, however, altogether on maxims or definitions, we cite the following cases, decided at law or in equity, showing how the rule has heretofore been understood and applied: *Greathead* v. *Bromley*, 7 T. R. 456 ; *Marriot* v. *Humpton*, Id. 269 ; *Scherman* v. *Weatherhead*, 1 East, 537 ; *Duke de Cadavœl* v. *Collins*, 4 Ad. & E. 866 ; *Wilson* v. *Ray*, 10 Id. 88 ; *Brown* v. *McKinally*, 1 Esp. 279 ; *Milness* v. *Duncan*, 6 B. & C. 679 ; 2 Smith, L. C. 240 ; *Breadstreet* v. *Clarke*, 12 Wend. 602 ; *Rice* v. *King*, 7 J. R. 20 ; *Many* v. *Harris*, 2 Id. 24 ; *Gardner* v. *Backbee*, 3 Cow. 120 : " The judgment of a Court of concurrent jurisdiction, directly upon a point, is conclusive between the parties upon the same matter coming directly in question in another suit." (*Etheridge* v. *Osborn*, 12 Wend. 399 :) "A verdict and judgment thereon on a fact or title distinctly in issue may be pleaded, by way of estoppel, in another suit between the same parties or their privies in respect to the same fact or title." (*Baxter* v. *The N. E. Marine Ins. Co.*, 6 Mass. 217 ; *Brickhead et als.* v. *Brown et als.*, 5 Sand. 134 :) " The doctrine that the law will not suffer the same question to be twice agitated between the same parties is not limited in its application to cases in which the cause of action in the successive suits is exactly the same, and the decision in the prior pro-

ceeded exclusively upon a question of fact. The sound and salutary doctrine of *res judicata* has a much wider range of application. The general rule deducible from all the authorities is, that, as between the parties and privies, the prior judgment is conclusive as to every question it embraced and determined, and upon which, in a subsequent suit, the right of the plaintiff to recover or the validity of a defense is found to depend." (*Dauchy* v. *Goodrich*, 2 Vt. 127 ; *Green* v. *Sarmicosto*, 3 Wash. C. C. 17.)

From these authorities we conclude that a judgment unreversed is conclusive upon the merits of the action in which it was rendered, and estops parties and privies from opening anew any question, or point of fact, or law, involved in the issues, and material to the judgment, and from alleging any matter of fact or law inconsistent with its entire rectitude and justice.

But there are other matters connected with the just exposition of the rule of *res judicata* which, as yet, have not been adverted to.

It has sometimes been supposed that the second action must be of the same form as the prior one, or that the two must be alike in purpose or object, in order to invest the judgment in the first suit with the character of an estoppel. But these ideas have been exploded by a series of decisions, English and American, from the number of which we select the following : *Williams* v. *Thucker*, 1 B. & B. 514 ; *Hopkins* v. *Freeman*, 13 M. & W. 372 ; *Foster* v. *Allanson*, 2 T. R. 483 ; *Smith* v. *Gibson*, Cases Term Hardw. 319 ; *Moore* v. *Watts*, 1 Ld. Raym. 614.

These cases decide : " That a judgment recovered will be conclusive whenever the cause of action is the same, although the form of the second action be different from that of the first ; and, therefore, that a recovery of damages in an action of trover will vest the property in the chattels sued for in the defendant, and will be a bar to an action of trespass for the same thing."

*Hopkins* v. *Lee*, 6 Wheat. 109 ; *Betts* v. *Starr*, 5 Conn. 550 ; *Dennison* v. *Hyde*, 6 Id. 508 ; *Coit* v. *Tracy*, 8 Id. 268 ; *Starkie* v. *Woodward*, 1 Nott & McCord, 329 ; *Lessee of Wright* v. *Deklyne*, 1 Peter's C. C. R. 198, 202 ; *Canaan* v. *Greenwood Turnp. Co.*, 1 Conn. 1, 7 ; *Cist* v. *Zeigler*, 16 Serg. & Rawle, 282 ; *Gardner* v. *Buckbee*, 3 Cow. 120 ; *Wright* v. *Butler*, 4

Wend. 284, 288; *Wood* v. *Jackson*, 8 Id. 1; *Love* v. *Waltz*, 7 Cal. 252; 2 Phil. Ev. 18: "The criterion for trying whether the matter or cause of action be the same as in the former suit is, that the same evidence would sustain both actions." (*Patt* v. *Rawstere*, 2 Mod. 319; *Hitchin* v. *Campbell*, 2 Bl. 827.)

We remark further, that the rule of *res judicata* extends to cases in which municipal corporations are concerned.

In *The Mayor of Sandwich* v. *Queen*, (10 Q. B. 571) a municipal corporation having assessed compensation to a dismissed officer, in obedience to a *mandamus*, was held to be estopped from disputing his right to compensation, in a subsequent proceeding by *mandamus* to compel them to execute a bond for securing to him an increased amount of compensation awarded on appeal from their assessment by the Lords of the Treasury. (2 Smith L. C. 518.)

2. The case at bar is within the operation of the rule as enunciated in the maxims quoted, and more fully defined in the cases cited.

What were the "questions which were embraced and determined" (5 Sand. 134) in the suit of *The City and County of San Francisco* v. *Pixley et als.* ? Or what was the "matter in dispute" in that suit ? (7 T. R. 456.) What were the "facts" involved ? (1 East, 537.) What were the facts directly in issue ? (7 T. R. 20.) What were the "precise points in the issue that were decided ? " (2 T. R. 24.) Or what was the "right determined ? " (3 Wash. 17.)

From an analysis of the pleadings, it appears that there were four "questions," or "matters," or "points" of controversy upon which issue was "directly" taken in the pleadings.

1. Were the lands exempt from execution sale by the Act of May 1st, 1854 ?

2. Were they exempt on the ground that they were a source of municipal revenue ?

3. Were they exempt (together with all other property of the city and county) by the effect of the Consolidation Act ?

4. Were they exempt on the ground that they were held by the city "in trust," and "not by a title in fee simple ?"

All other allegations, though admitted, and therefore, in one

sense, not in controversy, were a part of the case made, and to be determined by the Court.

Each of the foregoing points of controversy embraced questions of fact and law. What transpired at the trial of the case;' whether evidence was introduced or not on the questions of fact; what admissions, if any, were made; the record does not disclose, nor is it at all material to inquire.

The ultimate question to be judicially determined, was the question of the liability of the lands to be sold on execution for the payment of a particular judgment against the city; and four distinct "grounds," each of mingled fact and law, were assigned why they should be adjudged to be exempt from such liability. Should any one of those grounds be upheld, the conclusion would be in favor of the exemption; and in the event only of all the grounds being overruled, could there be a judgment in favor of the liability.

All of these subordinate questions were "material" to the solution of the main problem. No one of them was "collateral" to the other, or to the principal question. All of them were "directly" presented as bases of judgment. Each of them was the minor premise of a distinct syllogism, and it was simply impossible that the judicial mind should express itself in judgment until after the truth or falsity of the several propositions had been determined; and when determined, the conclusion or judgment would follow as a matter of routine. Thus, in the process of investigation, the four points named were secondary to nothing. Judicial reflection must begin with them, and end with them. The recorded judgment would be but the solemn announcement of the conclusions which the Chancellor had arrived at with regard to them, as the grounds upon which his conclusions were founded.

These remarks bring us to the decree. What was adjudged?

"It is ordered, adjudged and decreed, that the sale under the judgment and execution of the San Francisco Gas Company against the City of San Francisco, in the complaint and answer mentioned, was valid and effectual to pass the title to the premises in controversy to the purchaser at said sale, and that there is no equity in the complaint."

This is nothing less than a direct adjudication that all the grounds upon which it was sought to show that the sale was invalid were themselves utterly fallacious.

The "land," or the city's "title" to it, is the one prominent topic in the complaint. Pixley's execution has been levied upon the "lands." The "lands" have been sold on the execution. Doane "threatens to give, and will give, a deed of the lands," if not enjoined. The "lands are held by the city in trust, etc., and not in fee simple absolute," and for that reason, as well as for three others named, "the sale to Pixley is void," and therefore Doane should not be allowed to give him a deed. The judgment that the "sale was valid and effectual to pass the title to the purchaser" is a direct adjudication that the lands were not held by the city under the trust alleged, and that they were held by it in fee simple absolute. On any other hypothesis the judgment must be erroneous; but here the question is, not whether the judgment is erroneous, but this: "What does it include?"

If the judgment in *Hart* v. *Burnett* establishes the "trust" as the law of that case, the judgment in question disaffirms the trust as the law of the case in which it was rendered, and affirms a fee simple title in its stead.

III.    The judgment in the *City and County of San Francisco* v. *Pixley et als.* is available to us against the appellant as a muniment of title, constituting, when taken in connection with the Sheriff's deed to Pixley, a link in our own deraignment.

That none are bound by judgments except parties and privies is admitted, and that the defendant is a stranger to every document, proceeding and transaction through which the plaintiff claims title under the city, stands confessed. As to him, they are all *res inter alios acta*. But if the city had given a voluntary deed to Pixley, under a full power, and Pixley had conveyed to another, and he to another still, and he to the plaintiff, these successive deeds would doubtless have made the plaintiff the owner of the lands as against the city, and much more so, if possible, as against Hanlow, the maxim. of *res inter alios acta* to the contrary notwithstanding.

There are certain purposes for which a judgment is always admissible. It is always admissible to prove the fact of its rendition,

and all the legal consequences resulting from that fact, whoever may be the parties to the suit in which it is offered in evidence. (1 Greenl. Ev. sec. 538; *Pico* v. *Webster*, 14 Cal. 204.)

Wherever a party claims title under a Sheriff's deed, proof of the judgment and execution under which the sale took place is not only always admissible, but such proof is always necessary. (*Sullivan* v. *Davis*, 4 Cal. 292.)

The judgment in question is admissible against the defendant, upon the same principle that the Gas Company's judgment upon which the execution issued was admitted against him without challenge.

If there is any doubt, however, as to the admissibility of the judgment in the *City and County* v. *Pixley and Doane*, in connection with the Sheriff's deed, and as part and parcel of the plaintiff's deraignment, it is dispelled by the decision in *Barr* v. *Gratz*, (4 Wheat. 110).

*Baldwin & Haggin*, also for Respondent.

I. That the bill put in issue the title of the land is apparent. That the city and county was the proper representative of this title, and the proper party to sue, or be sued, in respect to it, is unquestionable; otherwise, no controversy could ever be terminated involving title to this property, and no cloud or embarrassment removed from property thus situated.

The bill is filed upon the express ground that this title is in the city and county, and that it is a trust estate, not subject to sale on execution, and an injunction is sought to restrain the deed of the Sheriff. The facts are all set out in the bill, answer and decree. Upon these facts the judgment of the Court is invoked in respect to the title, and whether it be leviable; and the judgment is, that the property was that of the city at the date of the sale, and subject to sale. And further, the bill asserts that the purchaser at the sale acquired no title to the land, and had no right to a deed; and upon this proposition issue is joined by the answer. The decree finds that the purchaser did acquire title to the land, and that he has a right to the deed. There unquestionably was an issue joined upon facts and law, and these directly affecting title to property; and these facts have been passed upon by a Court of general juris-

Fulton *v.* Hanlow.

diction, having full cognizance of the matter and jurisdiction of the parties.

The maxims, that no one ought to be vexed twice for the same cause, and that it is the interest of the republic that there be an end to litigation, are common to the jurisprudence of all countries. The rule has been so well given in the Duchess of Kingston's case that it is the general text of authors and jurists. The rule has been quoted with approbation by this Court in *Collins* v. *Butler* (13 Cal.) The following cases in this Court define the rule and apply it to particular facts. (*Laird* v. *Kidd*, 15 Cal. and *McDonald* v. *Bear River Co.*, Id.)

II.   The judgment recovered will be evidence whenever the cause of action is the same, although the form of the second action be different from that of the first; and therefore a recovery of damages in trover will vest the property in the chattels sued for in defendant. It is said (Broom's Legal Maxims, 229) that if it be doubtful whether the second action is brought for the same cause, it is a proper test to consider whether the same evidence would sustain both actions, and what was the particular point or matter determined in the former action.

Probably the observations of Sir Knight Bruce (1 Younge & Col. 597) go further for appellant than those of any other Judge : "It is, I think, to be collected that the rule against reagitating matter adjudicated is subject, generally, to this restriction—that however essential the establishment of particular facts may be to the soundness of a judicial decision; however it may proceed on them as established, and however binding and conclusive the decision may, as to its immediate and direct object, be, those facts are not all necessarily established conclusively between the parties, and that either may again litigate them for any other purpose as to which they come in question, provided the immediate subject of the decision be not attempted to be withdrawn from its operation, so as to defeat its direct object. This limitation to the rule appears to me, generally speaking, to be consistent with reason and convenience, and not opposed to authority."

We have thus stated the rule and its qualifications. It is not necessary to examine the rule further, for the appellant must seek

31

to bring himself within the limitations. He must show that the decree, in this case, did not involve the title, but that the bill was for a purpose different from and involved other issues than the assertion of the title ; that the title, or the quality—as whether leviable or not—was collateral and incidental to the main purpose of the suit, or that this fact of title, or its quality—as whether leviable or not—was a mere fact or argument in the case, upon which the decree went, and not the main matter put in issue ; that the fact found by the decree, that the title was in the city and subject to sale, was merely an argument conducing to the conclusion that the deed should be enjoined, and not the substantive object and purpose of the bill, and the point actually determined in the action.

We will suppose the appellant's argument to be thus stated : The city filed its bill to enjoin the execution of a deed by the Sheriff ; the question, and only question, in issue was, whether the Sheriff should be enjoined from making the deed. The plaintiff in the bill insisted that the deed should be enjoined, because the city had no leviable estate in the lands sold ; therefore, the decree negativing this ground and refusing the injunction was only a decree upon the point that the city had no right to restrain the Sheriff from making the deed. This decree, then, is only conclusive to show that the city had not the right to an injunction of this sort, but not conclusive as to the leviable character of the property, for this affirmation was only argumentative or collateral to the conclusion referred to.

In answer to this view we have several suggestions to make :

1st. That if this be the rule, and applicable here, it would show that no question of title could ever be tried and determined by judgment ; for in trover, trespass, and in other actions, the title is not the main thing involved, but only the right to damages ; and in equity cases, when particular relief is asked, the question decided would be confined to the title to that particular relief, or to general relief, and not the elements or causes on account of which that relief is sought. If, for example, A sues B for fraud in obtaining a deed, and prays the cancellation of the deed, the question decided in favor of B against the fraud would not be determinative of the fraud, but only of the right to have the deed canceled in the way sought.

2d. The city had the right to file the bill upon the grounds assumed, and to put in issue the facts pertaining to those grounds. 1st. She had this right because she was a trustee as assumed, and the trust estate was about to be deeded away. As such trustee, she had a right to ask the protection and advice of a Court of Equity ; for the estate might be sacrificed if the property passed from her hands. 2d. She had the right, because—having the legal title, and no one being, so far as appears, in adverse possession— that title drew to her the possession, and therefore she might try the question of the right of the Sheriff or purchaser to cloud or embarrass the title. 3d. She had the right, because the direct effect of the deed, though the property were not leviable, was to cloud the title ; for it will not do to say that the deed would be void on its face because the property was not leviable, for *non constat*, that this was trust property, or that she did not hold by some other title than the pueblo claim. *Prima facie*, it would seem that the property of the city is leviable and vendible for her debts, and it would require proof *aliunde* the deed to show that this particular property was not, because it was pueblo property, and therefore held in trust. The Court cannot judicially know that this property is upland, or whence the title is derived, or any other facts characterizing it. The whole question would be left open to parol contestation; and after possession or claim by the city were once shown, the city, or those claiming through her, must affirmatively show that the property was clothed with a trust which exempted it from the usual incidents of property ; among them, that of its vendible quality.

This case is brought strictly within the authority of *Pixley* v. *Huggins* (15 Cal. 133). Here the deed from the Sheriff is as if it were the deed from the city. The holder of the Sheriff's deed and the subsequent vendee from the city, if there were one, would claim through the same source of title ; and it is not material, as has been seen, that the claim sought to be enjoined is inoperative. Indeed, here the city and the purchaser claimed the same identical title, and the deed of the Sheriff *prima facie* would convey this title to the purchaser. That the deed was really inoperative to do this, is no objection ; for if it were, there would be no foundation for the relief, but the deed would be operative to create embarrassment and to cloud the title.

The case of *Shattuck* v. *Casson*, (2 Cal. 588) subsequently affirmed in *Guy* v. *Hermance* (5 Id. 73) and *Hickman* v. *O'Neal*, (10 Id. 293) embodies the same principle upon analogous facts. The cases of *U. S. Bank* v. *Shultz*, (2 Ham. 471) and *Norton* v. *Beaver*, (5 Id. 179) go further than this Court has gone in *Pixley* v. *Huggins*. But this case is brought directly within the rule laid down in that case by the test prescribed—" Would the owner of the property, in an action of ejectment brought by the adverse party, founded on the deed, be required to offer evidence to defeat a recovery ?" If the purchaser shows a deed from the general owner of the property as against him, the deed is *prima facie* sufficient to carry the title, and it rests with the owner to show that this consequence does not attach—as that the deed was fraudulent, or the property exempt, or not vendible, or held in trust, etc. Nothing appears upon the face of the Sheriff's deed to show that the city had no other title than the old pueblo title to this property, or that this property was pueblo property, so derived and held as to be exempt; and even if the Court knew the location of the land, and could know that it was pueblo land, the facts which constitute the title and show its source are in parol, or exist *aliunde* this record. But it nowhere appears by the levy and deed that this particular tract of land was pueblo land, and the Court cannot judicially know that it was. Upon this view then, it seems clear to us that the bill might have been well filed by the city to set aside this deed, if made; or what is the same thing, to set aside the sale; or to enjoin the execution of the deed, and to declare the title of the city unaffected by the sale.

3d. But if this were not so, the city chose to file this bill *quia timet* for the purpose of testing the title, putting the very facts in issue which showed its title. It asked the judgment of the Court upon that matter. The defendant took no exception to the manner of presenting the question. The mere manner in which a party chooses to urge his rights, or to assert his claims, especially under our system, is immaterial, if his antagonist consents. No one but the parties to the cause can complain of irregularities of form or mode. If they agree, no one else can object. It might have been thought best, for the interest of all concerned, to try this question

in this way.   So trying it, it is just as well as if the issue had been
met in a regular proceeding by the city, in the actual possession of
the land, asserting its own and challenging the adverse title.   In
other words—she thought it for her interest to settle this question of
leviable title before any deed by the Sheriff was executed.   Now,
no restriction exists upon a party to assert a right like this at any
time he chooses.   One time is as good as another.   Title under a
sale may be tried before a deed is executed by the Sheriff, as well
as afterwards.   The effect of the trial is the same in both cases.
It is the fact of the trial, not the time of it, or the time when, or
the way the party interposes, which fixes the title to that which is
in litigation.   In this case, the parties may have seen that this was
the best mode and the best time to try the title.   It might save
delays, inconvenience and annoyance thus to try it; and if the par-
ties consent, or do not object thus to try it, the trial is conclusive of
what is adjudicated.

4th.  We have assumed, for all purposes of the argument, that
this was a bill—or that the case was dependent upon the same prin-
ciples as that of a bill—to enjoin the sale of this property under exe-
cution.   But it is not.   The sale had already been made.   The
right of the purchaser, whatever it was, had enured.   The defend-
ant in execution not offering to redeem, was in the same condition,
for all practical purposes, as if the legal title derived from the sale
had already vested.   It was not an attempt, therefore, to prevent
a sale on the part of the city, but an attempt by it to divest a right
which had arisen from the sale, and which only awaited the lapse of
a few days in order to give a perfect title, if the fact was that such
a sale could give title to the purchaser under it.   Now the defend-
ant might have moved to set aside the sale if any just cause existed
for the motion; or it might have filed a bill in equity, if equitable
circumstances existed, for the same purpose.   It chose to file a bill
for this purpose.   The sale having passed a title—or what was the
same thing, a right to a title—upon the plaintiff, the city and
county, was cast the burden of divesting this right; and to divest
it, this proceeding was taken.   The attack, therefore, was made in
this form upon the purchaser's title.   That attack was based upon
the alleged invalidity of the sale, and the sale was valid or not,

according to the fact, as it might turn out, whether the plaintiff in execution had a right to levy upon the property and sell it. The premises were, that the property was not subject to levy; the conclusions, that therefore there was no legal sale. Upon these propositions issue was taken, and that issue found for the purchaser, and the decision is conclusive.

III. A verdict, or judgment, on any fact, or title, distinctly put in issue, is conclusive in another action, between the same parties and their privies, in respect to the same fact or title. It is not sufficient that the particular fact or title is put in issue. It must be tried by the jury and constitute the basis and foundation of the verdict. It must be relevant and material, and unless specially found, must have been necessarily passed upon by the jury or Court. (*Burt* v. *Sternberg*, 4 Cow. 559; *Gardner* v. *Buckbee*, 3 Id. 120; *Gilbert* v. *Thompson*, 9 Cush. 348; *Porter* v. *Baker*, 19 N. H. 166; *McDonald* v. *Bear River Co.*, 15 Cal. 148; *Outram* v. *Morewood*, 3 East. 345; 6 Mass. 227; 8 Id. 536; 11 Id. 445; 12 Id. 268; *Wood* v. *Jackson*, 8 Wend. 20; *Manny* v. *Harris*, 2 Id. 29; *Brockway* v. *Kinney*, 2 Id. 210; *Eastman* v. *Cooper*, 15 Pick. 285; *Baker* v. *Rand*, 13 Barb. 152; *Burkhead* v. *Brun*, 5 Sand, 154; *Chapman* v. *Smith*, 16 Peters, 144; 3 Wil. 304; 4 Rawle, 188; 2 Whart. 119; *Jackson* v. *Hoffman*, 9 Cow. 271; *Owen* v. *Davison*, 1 Watts, 149; *Montford* v. *Hunt*, 3 W. C. C. R. 28; *Kingsland* v. *Spaulding*, 3 Barb. ch. 141; *Kelly* v. *Pike*, 5 Cush. 484; *Marsh* v. *Pier*, 4 Rawle, 282; *Lloyd* v. *Barr*, 1 Jones, 41; 13 Barb. 152; 18 Ala. 281; *Green* v. *Clark*, 5 Denio, 497; *Agnew* v. *McElroy*, 10 Smedes & M. 552; *Burt* v. *Steinbaugh*, 4 Cow. 599; *Barber* v. *Elliott*, 4 Barb. 457; *George* v. *Gillespie*, 1 Iowa, 421; *Doty* v. *Brown*, 4 Cow. 71; *Chase* v. *Walker*, 26 Maine, 553. See also, 7 Geo. 434; 19 Vt. 144; 18 Conn. 91; *King* v. *Chase*, (15 N. H. R. 9) deserves consideration from the weight justly attached to the opinions of so learned and able a jurist as Chief Justice Parker.

This case is not in harmony with the Massachusetts cases. (See 12 Metcalf, 139.) In the case in 15 N. H., the question was, whether the defendant converted some oats, and this question was dependent upon the validity of a certain mortgage; if the mortgage

was valid, the plaintiff was entitled to recover—otherwise, not. The jury found against the plaintiff. It was claimed that this finding was conclusive of the fact of the invalidity of the mortgage. The Court quote the rule laid down by Lord Ch. J. De Grey, in the Duchess of Kingston's case, in which the qualification appears, that a judgment is no evidence of any matter which came collaterally in question, or of matter incidentally cognizable, or of matter to be inferred by argument from the judgment. The Court asks what is meant by a judgment directly upon the point, and cites 1 Starkie, 190; 1 Wm. Black. R. 831; *Hitchen* v. *Campbell*, 1 Story's C. C. R. 474; *Mullett* v. *Faxcroft*, 4 Sumner's R. 165; *Wadleigh* v. *Veazie.* The learned Judge argues that the meaning cannot be that any fact which may be set up by one side, and controverted by the other, is the matter in issue; for that would make every fact in proof definitive. He says: " It is that matter upon which the plaintiff proceeds by his action, and which the defendant controverts by his pleading, which is in issue." Deeds which are merely offered in evidence are not in issue, even if their authenticity is denied. " It is important to apply the rule to what was in issue in the action, and not to what was merely incidentally in controversy in the evidence."

This, perhaps, is one of the strongest cases in limitation and restriction of the general rule already given, and is opposed to the New York cases and many others. (See *Jackson* v. *Wood*, 3 Wend. 27-8; Id. 9.) And we have cited it to show that we are clearly within the rule as there limited.

FIELD, C. J. delivered the opinion of the Court—NORTON, J. concurring.

This is an action of ejectment for the possession of certain real estate situated within the city of San Francisco. The plaintiff claims title by virtue of a conveyance from the Sheriff of the county of San Francisco, executed to Frank M. Pixley, upon a sale under a judgment and execution against the city, and of certain mesne conveyances from Pixley to himself. The judgment against the city was recovered by the San Francisco Gas Company, and was docketed on the fourteenth of May, 1856; the execution was

issued on the tenth of February, 1858, and the sale was made on the twenty-third of the subsequent month. At such sale, Pixley became the purchaser; and no redemption having been made, the Sheriff executed to him a conveyance on the thirteenth of December following.

The right of the plaintiff to recover depends upon the efficacy of this sale and conveyance. No question is made as to the validity of the judgment of the San Francisco Gas Company, or the regularity of the proceedings of the Sheriff, or the sufficiency of the mesne conveyances to the plaintiff to pass whatever title Pixley acquired. The question then is: Did the city of San Francisco possess, at the time that judgment was docketed or the execution was levied, any title or interest in the premises in controversy, which was the subject of levy and sale under execution? If she possessed no such title or interest, of course nothing passed by the sale and conveyance of the Sheriff. And that she possessed no such title or interest follows from the admission made by the parties on the trial of the present action, and the decision of this Court in the case of *Hart* v. *Burnett.* (15 Cal. 530.) The admission made was, that the premises described in the complaint constitute a portion of the pueblo lands of San Francisco, formerly known as the Yerba Buena, confirmed to the city by the decree of the United States Land Commission. Those lands, and the tenure by which they are held by the city of San Francisco as successor of the old Pueblo of Yerba Buena, were the subjects of extended consideration by this Court in *Hart* v. *Burnett.* That case, like the present, was an action of ejectment, in which the plaintiff relied for recovery upon a sale and conveyance by the Sheriff under an execution issued upon a judgment against the city. The premises claimed in that case also constituted a portion of the pueblo lands of San Francisco, and the plaintiff contended that the city had succeeded to the rights of the pueblo with reference to them, and that her title was absolute; and, consequently, the subject of levy and sale under execution. But the Court, after elaborate examination, though agreeing with the plaintiff that the city had succeeded to the rights of the pueblo in the lands, was of opinion, and so adjudged, that the lands were held in trust for the public use of the city, and were not, either under the old Government or the new, the subject of seizure

and sale under execution; and further, that the title of the city was unaffected by sales of the Sheriff under executions against her; and that a defendant in ejectment relying solely upon his possession could set up the invalidity of such sales and of the title derived therefrom.   The decision thus rendered covers the present case, and necessitates a judgment for the defendant, unless its effect is obviated by the decree of the District Court rendered in proceedings taken by the City and County of San Francisco to enjoin the execution of a conveyance by the Sheriff upon the sale to Pixley. As already stated, the sale to Pixley was made on the twenty-third of March, 1858.   On the twenty-third of September following, the day on which the time for redemption under the statute would have expired, the City and County of San Francisco, which had succeeded to the rights and interests of the City in the premises, filed a complaint in the District Court of the Twelfth District against the Gas Company, the Sheriff of the county, and Pixley, praying for an injunction to restrain the Sheriff from executing, and Pixley from receiving, a conveyance of the premises sold.   The complaint alleged as grounds for the equitable interposition of the Court, that the lands sold were exempt from execution by the Act of May 1st, 1854; that they constituted one of the sources of the revenue of the city; that provision for the payment of the judgment against the city had been made by the Consolidation Act of April 19th, 1856; that the lands were not held by the city in fee simple, but were derived from the Mexican Government in trust for those who might require the same for actual settlement; that the city was indebted to an amount equal to that allowed by the charter when the debt was contracted upon which the judgment of the Gas Company was obtained; and that a deed to Pixley would cloud the title of the city, and work irreparable injury.   To this complaint the Gas Company answered, disclaiming all interest in the subject matter of the suit.   This disclaimer was undoubtedly made from the fact stated in the complaint, that its judgment had been previously assigned to Pixley.   The Sheriff answered, alleging that as he acted in his official capacity in executing process, he was not a necessary party, and had no interest in the litigation.   The defendant Pixley answered, denying, in substance, the several matters alleged as

grounds for the equitable interposition of the Court by injunction. No proofs were offered in the case by either party, and the case was submitted to the Court for its decision upon the complaint and answer. On the tenth of September, 1859, the Court rendered its decision, to the effect that the sale under the judgment and execution of the Gas Company was valid and effectual to pass the title of the premises to the purchaser, and that there was no equity in the complaint; and adjudging that the complaint be dismissed as to the Sheriff and Gas Company, and that Pixley was entitled to a conveyance.

Upon this decree the plaintiff relies to take the present case out of the operation of the decision in *Hart* v. *Burnett*. He asserts, with reference to it, two propositions: first, that the decree is an adjudication that the lands sold were not held by the city under any trusts, as determined in *Hart* v. *Burnett*, but that the title of the city to those lands was subject to levy and sale under execution, and that by the sale and conveyance in question, the title passed to Pixley and became vested absolutely in him; and second, that the decree is admissible in connection with the conveyance as a muniment of title constituting a link in the deraignment to the plaintiff.

The construction which we give to the decree will render it unnecessary to consider the second proposition. As we read the decree, it is not an adjudication upon the character of the title of the city which the purchaser acquired from the sale and conveyance of the Sheriff. There was, in fact, nothing before the Court from which it could pass upon the character of the title. The Sheriff had advertised and sold whatever right, title and interest the city possessed in the premises which was the subject of levy and sale. He could sell no other title or greater interest. The City and County filed a complaint to restrain the execution of a conveyance to the purchaser; and the Court adjudged that the sale was effectual to pass the title—that is, such title as the Sheriff had sold, whatever it might be. It is that title, and no other, to which the decree refers. If there were any doubt as to this construction, it is removed by that part of the decree which adjudged that there was no equity in the complaint. In thus adjudging, the Court determined that the matters set forth as grounds for restraining the execution of the conveyance were insufficient to justify any interference with the action of

the Sheriff, without passing upon the truth or falsity of those matters.  The Court may very well have considered that if the premises were held in trust by the city, as alleged in the complaint, or if for any other reason there alleged were exempt from seizure and execution, the conveyance of the Sheriff could do no harm, as nothing would pass by it; and hence, that there was no occasion for the injunction.  Indeed, we do not perceive that the Court could with propriety have passed upon any question respecting the character of the title acquired, after it had arrived at the conclusion that there was no equity in the complaint, even if there had been, as there were not, any proofs before it on the subject.  Nor does it matter whether its conclusion in this particular was correct or otherwise.  When once reached, it only remained for the Court to deny the injunction and dismiss the suit.  The consideration of the character of the title was, then, foreign to the case, and entirely unnecessary for its disposition; and, as a consequence, any declaration in the decree as to that title was without any binding force as an adjudication either upon parties, privies, or anybody else.  (*Hotchkiss* v. *Michaels*, 3 Day, 138 ; *Coit* v. *Tracy*, 8 Conn. 268.)  The legal operation, therefore, of the decree as an adjudication between the parties, is precisely the same which would have followed had it simply denied the injunction and dismissed the suit for want of equity in the complaint.  It establishes the fact that the matters alleged were not sufficient for the exercise of the jurisdiction of a Court of Equity ; it determines nothing as to the truth or falsity of those matters, or as to the rights of the parties upon them, when they are presented in a Court of Law.  (*Lessee of Wright* v. *Deklyne*, 1 Pet. C. C. 198.)

As already stated, it does not matter whether the conclusion which the Court reached as to the want of equity in the complaint was correct or otherwise.  The conclusion stood as the determination of the Court upon the effect, as entitling the complainant to the injunction, of the matters he alleged, assuming them to be true.  But there is no doubt, in our judgment, of the correctness of the conclusion in this particular.  The equity asserted, and upon which alone the suit proceeded, was that the premises were not the subject of levy and sale on execution, and that the deed of the Sheriff

would cast a cloud upon the title. It was to prevent the casting of a cloud upon the title that the equitable jurisdiction was invoked, and averments respecting the character of the property, or the condition upon which the same was held by the city, were immaterial except as they showed that this result would follow from the execution of the deed. As was said in the case of *Pixley* v. *Huggins* (15 Cal. 132) : "The jurisdiction of the Court to enjoin a sale of real estate is coëxtensive with its jurisdiction to set aside and order to be canceled a deed of such property. It is not necessary for its assertion in the latter case that the deed should be operative, if suffered to remain uncanceled, to pass the title, or that the defense to the deed should rest in extrinsic evidence, liable to loss, or be available only in equity. It is sufficient to call into exercise the jurisdiction of the Court, that the deed casts a cloud over the title of the plaintiff. As in such case the Court will remove the cloud, by directing the cancelation of the deed, so it will interfere to prevent a sale, from which a conveyance creating such cloud must result." And the test laid down by the Court in that case, by which the question whether a deed would cast a cloud upon the title of the plaintiff may be determined, is this : " Would the owner of the property, in an action of ejectment brought by the adverse party, founded upon the deed, be required to offer evidence to defeat a recovery ? If such proof would be necessary, the cloud would exist; if the proof would be unnecessary, no shade would be cast by the presence of the deed. If the action would fall of its own weight, without proof in rebuttal, no occasion could arise for the equitable interposition of the Court; as in the case of a deed void upon its face, or which was the result of proceedings void upon their face, requiring no extrinsic evidence to disclose their illegality. All actions resting upon instruments of that character must necessarily fail."

If this test be applied to the Sheriff's deed to Pixley, it will be seen at once that no cloud could possibly be cast by it upon the title of the City and County of San Francisco. The judgment of the Gas Company, and the execution issued thereon, constituted the authority to the Sheriff to sell whatever interest in the premises the judgment debtor possessed at the time the judgment was docketed, or

Fulton *v.* Hanlow.

the execution levied, which was subject to levy and sale on execution.    The Sheriff could sell no other or greater interest, and his deed, of course, could pass none.    In deraigning title through this deed, in ejectment founded upon it, the plaintiff would first have to trace the property to the defendant—the city of San Francisco—and then produce his judgment, execution and Sheriff's deed.    But the very evidence by which the property would be traced to this city, consisting chiefly of the public laws of Spain and Mexico, would show that it passed under her control subject to specific trusts for certain public purposes, which necessarily exempted it from forced seizure and sale.    As a consequence, the action would necessarily fall of its own weight; for the judgment and execution conferred no authority to sell property thus held to satisfy a debt of the city.    When, therefore, the City and County of San Francisco, in the suit for an injunction, alleged that the lands were derived from the former Mexican Government, in trust for certain specific purposes, it showed that it had no claim whatever to the equitable relief prayed; that no cloud could be cast by the deed, if executed, upon the title, inasmuch as any action brought upon such deed must necessarily fail, from the impossibility of the plaintiff's tracing any leviable interest to the city.

The judgment of the Court below must be reversed, and that Court directed to enter judgment for the defendant upon the facts found by the referee.

Ordered accordingly.

NORTON, J. delivered the following concurring opinion:

The plaintiff, although showing no title other than one derived through a sale under a judgment and execution against the city of San Francisco, and admitting that the demanded premises were a portion of the pueblo lands of Yerba Buena, does not question the authority or effect of the decision in the case of *Hart* v. *Burnett*, (15 Cal. 530) but claims that his title derived in this way has become a good and valid title by virtue of a judgment pronounced in a case between the City and County of San Francisco, plaintiffs, and the San Francisco Gas Company, Frank M. Pixley and Charles Doane, Sheriff, defendants.    By this judgment it is claimed that

the question of the plaintiff's title has become *res judicata,* and that the judgment is binding upon and conclusive against the parties to that judgment and all other persons.

In order that a judgment should be a defense in another action on the ground of *res judicata,* the same point must have been *directly* in issue and determined by the judgment. There is frequently much difficulty in deciding what is to be considered the point which was *directly* in issue, and which is to be treated as having been so settled by the judgment, as to be held forever *res judicata;* and from the number of decisions to which this difficulty has given rise, cases may be cited favoring the most extreme views in either direction: on the one hand, holding that any matter that was litigated in the case, or even that might have been litigated, is to be deemed to have been *directly* in issue; and on the other hand, holding that only the ultimate matter, as to which the judgment gives or denies relief, is to be deemed to have been the point directly in issue. An instance of the latter class is to be found in the case of *King* v. *Chase* (15 N. H. 9). In that case the question was as to the title to a quantity of oats. One party claimed title by virtue of a certain mortgage; the other party claimed that the mortgage was a forgery, and insisted that the question was *res judicata,* because in a former action between the same parties in regard to another quantity of oats held by virtue of the same mortgage, the question of the genuineness of the mortgage was litigated between the parties, and it was decided that the mortgage was a forgery. The claim of *res judicata* was not allowed, because the question of the validity of the mortgage was not the *direct* point in issue in the former trial, that point being the title to the oats. The following cases are to the same effect: *Noel* v. *Willis,* (1 Lev. 235); *Hotchkiss* v. *Nichols,* (3 Day, 138); *Colt* v. *Tracy,* (8 Conn. 268); *Aslin* v. *Parker,* (2 Burrows, 666); *Gilbert* v. *Thompson,* (9 Cush. 348). In the case of *Bennett* v. *Holmes,* (1 Dev. & Battles, 486) Judge Gaston gives the rule in these words: " A judgment, therefore, in any action is conclusive only as to what it directly decides. As the judgment is the fruit of the action, it must follow the nature of the right claimed and the injury complained of, and can conclude nothing beyond them."

The question now before the Court is the *title* to the demanded premises. Was that the point *directly* in issue in the former action? In order to determine this question, we must consider what was the direct or ultimate object of that action; what was the injury complained of, and what was the relief asked or which could be obtained by the judgment of the Court. It was not an action to quiet title. The complaint did not ask for a judgment that the title was in the plaintiff, or not in the defendant; it did not ask a judgment that the title had not passed by the sale, or that a title would not pass by the deed threatened to be executed in pursuance of the sale. The injury complained of was that the threatened deed would be a cloud upon the plaintiff's title; and the only relief sought was an injunction to prevent the doing of the act by which the cloud would be created. It was directly alleged in the complaint, and denied by the answer, that the deed would create a cloud upon the title. And this allegation and denial formed the precise issue that was to be decided, and upon the decision of which the judgment was to turn, and the relief asked was to be granted or refused. In such an action, the only point that could be *directly* in issue, and be the exact matter settled by the judgment of the Court, was whether the threatened deed would be a cloud upon the title. Various reasons were given, or facts stated in the complaint, to show that the deed ought not to be executed; but whatever may appear to have been the views of the Court upon these facts, they did not either of them constitute the direct point in issue. The only judgment that could be given was merely a granting or denial of an injunction; and the only direct point upon which that judgment could be based was, that the deed would or would not be a cloud upon the plaintiff's title. Although the judgment of a Court of Equity is equally effectual as *res judicata* as that of a Court of law, the nature of their different jurisdictions must be considered in order to determine what was the exact matter decided. It is suggested, that whether or not the deed in question would constitute a cloud upon the title is a conclusion of law, and that the decision of this point would not determine any fact litigated by the parties. Without inquiring whether this should be considered a conclusion of law, or a resulting fact, it is sufficient to say that it is a point put in

issue by the pleadings, and upon which the judgment proceeds and rests.    Whether the preceding facts alleged are true or not is immaterial, if, being true, they do not make a case for the exercise of equity jurisdiction.    If in order to determine the case as one of equity jurisdiction it was only necessary to decide whether or not the deed would be a cloud upon the title—that is the *direct* point in issue, and the only one that becomes *res judicata* by force of the judgment.    As an illustration: suppose a complaint is filed to enjoin a Sheriff from executing a deed, and as a ground it is charged that there was no valid judgment to sustain the sale, and hence, as a resulting fact, that no title passed by the sale, and that the deed would be a cloud upon the title.    If the answer should deny the allegation that there was no judgment, and should further insist that, if there was a judgment, the deed would constitute no cloud upon the title, and the Court should thereupon deny the injunction and dismiss the complaint, would it be held in a future litigation that it was *res judicata* that the title had passed ?    Or, suppose a complaint filed to enjoin a Tax Collector from executing a deed under a tax sale.    Various irregularities in the proceedings of the Assessor and Collector might be stated, in order to show that the deed ought not to be executed ; in other words, to show that the title had not passed by the sale.    But the simple statement of these facts would not give a Court of Equity jurisdiction of the case.    It would be further alleged as the direct point of the case, and upon which the judgment of the Court must be based, that the deed to be executed would be a cloud upon the plaintiff's title.    If the Court should refuse the injunction, dismiss the bill, and the purchaser at the tax sale should take his deed, and upon it bring an action of ejectment against the plaintiff in the former action, would the judgment be held as having conclusively decided that there were no irregularities in the tax-proceeding, and that the title had passed ?    I think not.    The cases might be decided upon the views of the Court, whether right or wrong, as to whether the deed would or would not create a cloud, and without reference to the truth of the facts alleged to show that the deed ought not to be executed.

So obvious does it appear to me that a simple judgment denying the relief asked and dismissing the bill could not be considered as

deciding the question whether the title had passed that, I presume, if nothing more had been stated, the idea would not have been suggested. But in addition to the judgment, which decided the case, there was inserted in that judgment a direct adjudication that the title had passed, and that the purchaser was entitled to a deed. This was done some six months after the deed had been actually executed, and was plainly done for the express purpose of making the case *res judicata* upon this point. I think, however, this makes no difference. As we have seen, it is the point as to which relief was sought, and upon which the judgment rests, and not any incidental or secondary matter that may have been controverted by the parties, that becomes *res judicata*. That these subsidiary judgments should not be treated as being *res judicata* is the more apparent in this case, as no judgment upon those points was asked in the complaint, and no direct issue was made upon them by the pleadings, although they may be said to be put in issue inferentially.

My views upon this point make it unnecessary to consider the other points raised in the case, and I concur with the Chief Justice that the judgment should be reversed, and the Court below directed to render a judgment for the defendant.