## Case No. 12,660.

SEMPLE et mar. v. BANK OF BRITISH COLUMBIA.

[5 Sawy. 394.][1]

Circuit Court, D. Oregon. Feb. 10, 1879.

JUDGMENT—RES JUDICATA—WIFE'S SEPARATE ESTATE—ACTION FOR RENTS AND PROFITS.

1. The judgment or order of a court is not an estoppel, unless the matter decided was within

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

the purview of the proceeding before the court, and directly within the issue made and tried therein.

2. Where a wife mortgaged her separate property to secure the debt of her husband, and the mortgagee, before the sale of the same, to satisfy the debt entered and took the rents without the consent of the wife, he was not entitled to credit the same on the husband's debt, but was liable to her, as for the use and occupation of the premises.

3. In an action for mesne profits, the amount expended by the defendant while in the occupation of the premises for necessary repairs and legal taxes ought to be deducted from the gross rents or value thereof, and the balance is the damage which the plaintiff has sustained and which he is entitled to recover.

Action for use and occupation [by Ruth A. Semple against the Bank of British Columbia].

H. Y. Thompson and Todd Bingham, for plaintiffs.

William H. Effinger and Joseph N. Dolph, for defendant.

DEADY, District Judge. This action is brought to recover the sum of four thousand four hundred dollars for the use and occupation of lots 2 and 3 in Park block No. 1, in the city of Portland. The complaint alleges that the defendant is a foreign corporation doing business in Portland, and that the plaintiffs are husband and wife and citizens of Oregon; that the defendant on July 18, 1874, entered into the possession of the premises and received the rents and profits of the west half of said lot 3 until May 1, 1878, and of the remainder of said premises until the commencement of this action—May 11, 1878; that during all said period the plaintiff, Ruth A. Semple, "was and now is the owner in fee in her separate right" of said premises; and that the reasonable value of said rents and profits during the period aforesaid is one hundred dollars per month.

The answer of the defendant, filed January 1, 1879, denies the ownership of Ruth A. Semple; admits the possession of the premises by the defendant as alleged; denies that they were worth one hundred dollars per month, but admits that the defendant received rents from the premises during the period aforesaid of the value of four thousand two hundred and ninety-seven dollars and fifty-seven cents, and alleges that it expended thereon during the same period for necessary repairs one thousand and forty-nine dollars and eighty-five cents—paid taxes duly assessed thereon six hundred and seventy-four dollars and forty-eight cents, and for "insurance against loss by fire," five hundred and thirty dollars and fifty cents—in all two thousand two hundred and fifty-four dollars and eighty-three cents, which, being set off against the rent, leaves a balance of two thousand and forty-two dollars and seventy-four cents. The answer also contains a plea of a former adjudication, to the effect that on July 8, 1878,

the circuit court for the county of Multnomah, in "a bill or suit and proceeding in equity" then depending therein between the same parties, duly made a decree "whereby the whole matter and thing in litigation here was finally determined;" and that the same is still in full force and effect.

The plaintiffs by their reply specially deny the affirmative allegations of the answer, including the defense of a former adjudication. The "proceeding" referred to in the plea of a former adjudication arose in this way: On June 27, 1873, the plaintiff, Eugene Semple, made and delivered his promissory note to the defendant in the sum of nine thousand five hundred dollars, payable on or before January 1, 1874, with interest at one per centum per month, and on the same day said Semple and the plaintiff, Ruth A. Semple, executed a mortgage of the premises to the defendant, as security for the payment of said note; that on March 10, 1874, suit was brought in the circuit court aforesaid to enforce the lien of said mortgage, which resulted, on June 17, 1874, in a decree against said Eugene upon said note for the sum of ten thousand two hundred and twenty-eight dollars, with interest as above from said date, and that the premises which were admitted and declared to be the separate property of Ruth A. should be sold as upon execution to satisfy the same, with the costs and expenses of suit; that upon July 18, 1874, said premises were sold to the defendant in pursuance of said decree, which sale was confirmed on August 3, 1874, and a conveyance thereof made to the defendant by the sheriff on May 20, 1875; that afterwards, on May 1, 1878, the defendant filed a motion in said circuit court, based upon the proceedings in said suit and an affidavit of Mr. W. W. Francis, its manager, asking the court "to set aside the return of the execution issued upon the decree in said suit, and all subsequent proceedings thereon had, and for leave to issue a new execution upon the said decree," or for such other relief as the court might think proper to grant.

The affidavit of said manager gave the outline of the proceedings in said suit as above, and then stated that the defendant "took possession of said property under said sale and conveyance," and still retains the same; that in 1877 said Ruth A. commenced an action in the circuit court of the United States for this district against the defendant, for the recovery of the possession of the west half of said lot 3, claiming to be the owner thereof in fee, upon the grounds that the sheriff who executed the conveyance thereof to the defendant, not being the sheriff who made the sale, was without authority; and, also, that the defendant being a foreign corporation, and not having appointed an attorney in the state to accept service of process against it, as provided by the statute of the state, was not authorized to make said purchase or receive said conveyance, and that said circuit court, upon the trial of said cause without a

jury, found said purchase and conveyance to be a nullity; that said decision in effect decides that the defendant has no title to any part of said premises, whereby the defendant obtained no satisfaction of said decree; and that the rental value of said premises is less per month than the interest upon said decree. [Case No. 12,659.]

Notice was given of the motion, and after hearing the parties, the court, on June 11, 1878, set aside the entry of satisfaction on the lien docket, the return on the execution, and authorized an alias execution to issue to enforce the decree, and sell the premises to satisfy the same. The order further provided—and it appearing that the defendant "hath for some time been holding and using the property," it is further ordered that it "do bring into court the whole amount of rent money taken by it from said property," to abide the future order of the court; and leave was given to the plaintiffs within ten days to file affidavits or make further defense to the proceeding. The plaintiffs made no defense—that is, filed no allegations or affidavits, but on July 8, 1878, the court made an order, stating therein that the defendant was in possession of the premises as mortgagee of the plaintiffs, and should account to them accordingly; that the receipts and expenditures of the defendant in connection with the premises were as stated above, and applied the balance due from the defendant, two thousand and forty-two dollars and seventy-four cents, upon said decree, discharging the defendant from all liability to the plaintiffs therefor, and directed that execution issue for the balance of the decree, thirteen thousand two hundred and sixty dollars and six cents, from which order the plaintiffs appealed, and said appeal is now pending in the supreme court of the state.[2] On August 10, 1878, the premises were sold on the alias execution to said Francis, for the amount of said decree, and on October 18, following, said sale was confirmed.

The plaintiff, Ruth A., claims title to the premises from the United States, under section 4 of the donation act of September 27, 1850 [9 Stat. 497], as the child of Nancy Lownsdale, the wife of Daniel H. Lownsdale, a settler upon the premises under said section. The patent for the donation, issued to said Daniel H. and Nancy on June 6, 1865, the latter having died in 1854, and the former in 1862, both intestate. Under the circumstances the patent inured to the benefit of the parties who were entitled to take the donation upon such a contingency, of which the plaintiff, Ruth A., was one. See Fields v. Squires [Case No. 4,776]; Lamb v. Starr [Id. 8,022]; Lamb v. Wakefield [Id. 8,024]; Davenport v. Lamb. 13 Wall. [80 U. S.] 427. Afterwards, on August 12, 1865, in a suit for partition of the west half of said donation, the same being the part thereof designated by the surveyor-general as inuring to said Nancy, the circuit court for the county

of Multnomah, set apart the premises in question in severalty to the said Ruth A. See Fields v. Squires, supra; Lamb v. Starr, supra.

Some question was made upon the admission of the evidence, by the defendant, as to the title of Ruth A., and therefore this statement of the grounds of it. But I apprehend the point is not seriously relied on. Indeed, a sufficient answer to it is found in the fact that the defendant claims under her and, therefore, is not at liberty to question her title, subject to the mortgage and sale thereunder, upon the alias execution. 2 Greenl. Ev. §§ 304, 307; Gaines v. New Orleans. 6 Wall. [73 U. S.] 715.

Upon this state of facts the plea of a former adjudication has not a leg to stand on. The proceeding before the circuit court, in which it was attempted to apply the money due from the defendant to the plaintiff, Ruth A., upon its decree against Eugene Semple, was neither an action nor a suit, but a mere motion to correct an error in the proceedings to enforce such decree to set aside the return of the officer upon the execution and the entry of satisfaction in the lien docket made in pursuance thereof, because, as it turned out, the supposed sale of the premises to the defendant was no sale, for want of capacity in it to purchase the same or receive the title thereto. The power of the court to make the order asked for is not questioned, and the subject and the parties were properly before it upon this motion.

But all that was done after this appears to have been done by the court, sua sponte, without either allegations or proofs upon the part of the defendant, except this motion and the statement of the account for the occupation of the property by its manager, and none whatever on the part of the plaintiffs. It seems to me, that the court might as well have attempted to settle or adjust any other account or controversy between these parties upon that motion, as this matter of the rent due the plaintiff, Ruth A., from the defendant for the use of her property. It is a fundamental rule of law, that a party is not bound or estopped by the judgment of a court as to a matter, point or fact not within the purview of the proceeding before it, or directly put in issue therein.

In Woodgate v. Fleet, 44 N. Y. 13, it is laid down that "a judgment is conclusive upon the parties thereto only in respect to the grounds covered by it and the law and facts necessary to uphold it; and, although a decree, in express terms, purports to affirm a particular fact or rule of law, yet if such fact or rule of law was immaterial to the issue, and the controversy did not turn upon it, the decree will not conclude the parties in reference thereto." To the same effect are People v. Johnson, 38 N. Y. 63; Gilbert v. Thompson, 9 Cush. 350, 99 Mass. 557; Manny v. Harris, 2 Johns. 29; Banks v. Moreno, 39 Cal. 238; Fulton v. Hanlow, 20 Cal. 482, 486; 1 Greenl. Ev. § 528; 1 Phil. Ev. 333; Freem. Judgm. § 271.

If this rent had been due Eugene Semple, the debtor in the decree, and he had, in reply to the motion for leave to issue an alias exe-

cution, answered and asked that the rent received by the defendant, while a mortgagee in possession, subsequent to the rendition of the decree, might be applied thereon, and that execution issue only for the balance, there would have been some show of legality and justice in the proceeding. But as it was, the plaintiff made no claim or demand in regard to the rent, unless it was to assert, arguendo, that it did not belong to Eugene Semple, and, therefore, could not be applied upon his debt.

The application of the defendant, although it stated the irrelevant fact that the rental value of the property during the time it was in its possession was less than the accruing interest on the decree, asked for nothing more than leave to issue an alias execution, because the proceedings on the first were found nugatory.

The plaintiffs made no other answer to the application than to ask to have it stricken from the files, which being denied, the prayer of the motion was allowed, of course; but all that followed in regard to the application of the rent due the plaintiff, Ruth A., upon the debt of Eugene Semple, was done without any procedure to base it upon, and rests upon nothing but the will of the court. It was not necessary, to give the desired relief to the defendant, that any action should have been taken in regard to this rent. When an execution was allowed to enforce the decree, the defendant could ask no more. The money received for the rent of the property was already in its possession. If the plaintiff, Ruth A., desired to reclaim it or recover the value of the use and possession of the premises, she could not be compelled to litigate the matter upon ex parte affidavits on the defendant's motion for an alias execution, but she had a right to bring an action against the defendant therefor when and where she chose and the law permitted, in which the questions of what was the value of the use and occupation of the premises, and was the defendant a mortgagee in possession with her consent, and therefore entitled to apply the rents and profits, during such possession, on its debt, could, upon proper pleadings and proofs, be formally tried with a court and jury. The proceeding and order in this respect were clearly coram non judice.

On the other hand, the extra-judicial character of this order is only equaled by its injustice. To fully appreciate this, it is necessary to premise that in this state the equitable doctrine prevails—that a mortgagee has no interest in the mortgaged property, and no right to the possession thereof—that the mortgage is a mere security for the debt, and the right of the mortgagor is limited to a sale of the property and the application of the proceeds upon his debt. Anderson v. Baxter, 4 Or. 110; Roberts v. Sutherlin, Id. 222; Witherell v. Wiberg [Case No. 17,917].

The plaintiff, Ruth A., never owed the defendant anything, nor promised to pay it anything. No decree was "recovered" against her for the debt due the defendant, as stated in the affidavit of the manager, and if there had been it would have been void. She did not join in the note of her husband, but simply mortgaged her property as a security for the payment of the same, and the only right that gave the defendant as against her was the right to have the property sold to satisfy the debt upon the decree of a proper court. In the meantime, and until that was lawfully accomplished, the property was hers and she had the same right to the occupation and enjoyment of it as if it had never been mortgaged.

True, she might, with her husband's consent, agree that the defendant might enter into possession and apply the rents and profits upon the debt for which the property was a security. But the defendant could not enter upon the premises as such mortgagee, and take the rents and profits without such consent, and this must appear and be shown by the defendant by some matter independent of, and collateral to, the mortgage. [Witherell v. Wiberg] supra.

In this case the defendant, having attempted to dispose of this property by a judicial sale, failed to do so because it attempted to purchase the same, when by law it was prohibited from doing business in this state. But the plaintiff, Ruth A., was not a party to this unlawful act, and was not affected by it. The property remained hers, just as though there had been no attempt to sell. Yet the defendant, wrongfully assuming that it had become the owner of the premises, entered thereon and took the rents and profits as its own. In its order the circuit court says that the defendant was in possession of said premises as the "mortgagee" of the plaintiffs. If, by this, it was meant to declare that the defendant was in possession by virtue of the mortgage, or with the consent of such plaintiffs or either of them, then it is a manifest error, because, in the affidavit aforesaid of the manager, which is the only evidence that appears to have been before the court, it is distinctly asserted that the defendant "took possession of said property under said sale and conveyance, and has retained possession ever since"; meaning thereby said void sale and conveyance of July 18, 1874, and May 20, 1875, respectively.

Upon this statement of the case, which is the most that can be said for the defendant, it did not enter as mortgagee at all. It entered without the consent of the mortgagors, and as owner, upon the assumption that it had purchased the property, but in fact without any right and as a trespasser. It became liable then to the true owner, Ruth A. Semple, as for the use and occupation of the premises, until the subsequent valid sale upon the alias execution. The amount due for such occupation was due her and not her husband. It was her separate property, and in no way liable for his debts or contracts. She was under no obligation, either legal or moral, to pay her husband's debt. True, she had pledged certain prop-

erty for that purpose, but this did not include the use and occupation thereof, which belonged to her, until her title was divested by a valid sale in pursuance of the mortgage.

It only remains to ascertain what the value of the premises was during the period. The defendant admits that it actually received four thousand two hundred and ninety-seven dollars and fifty cents rent from the property, exclusive of commissions to agents. But the proof is that the property was worth one hundred dollars per month. At this rate, from July 18, 1874, to May 1. 1878, when the defendant ceased to receive the rent on one fourth of the property, the rent would amount to four thousand five hundred and fifty dollars; and from thence to August 8, 1878, the date when the property was purchased by the manager, the rent at the same rate for the remaining three fourths would amount to two hundred and fifty dollars. Interest upon this sum, four thousand eight hundred dollars, at ten per centum per annum, counting from the end of the year in which the rent accrued, is six hundred dollars, which added to the principal, makes the sum five thousand four hundred dollars. From this must be deducted the amount expended during this period by the defendant for legal taxes and necessary repairs. The action for mesne profits is said to be an equitable one, intended to do justice to the plaintiff by putting him in as good a situation as he would have held provided he had not been dispossessed. Tyler, Ej. 848. Taxes paid by the defendant during his wrongful occupancy are to be deducted from the gross rents in ascertaining the actual damage which the plaintiff has sustained by the loss of the possession. Stark v. Starr [Case No. 13,307]. The amount paid for taxes and repairs was one thousand seven hundred and twenty-four dollars and thirty-three cents, to which add two hundred and fifty-eight dollars and sixty-five cents interest on the same. and the sum is one thousand nine hundred and ninety-two dollars and ninety-eight cents. leaving a balance due the plaintiff of three thousand four hundred and seven dollars and two cents.

The defendant also claims to deduct from this sum the amount paid for insurance—five hundred and thirty dollars and fifty cents. But this expense was not incurred for the benefit of the property, but the defendant. Insurance does not protect property from fire; and it is said, sometimes enhances the exposure thereto. This sum was expended by the defendant in his own interest to indemnify itself against a loss of its security by fire, and did not, nor does not, meliorate or improve the condition of the property.

There must be a finding for the plaintiff for the sum of three thousand four hundred and seven dollars and two cents.